# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIN SKALDE and JARROD SKALDE, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 3:20-cv-02039-JPW<br>) |
| v. | ) Hon. Jennifer P. Wilson<br>) |
| LEMIEUX GROUP, L.P., PITTSBURGH PENGUINS L.P., AND CLARK DONATELLI, | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS

Plaintiffs Erin Skalde and Jarrod Skalde filed a five-count complaint against Defendants Pittsburgh Penguins L.P. and Lemieux Group, L.P. (collectively, "the Penguins"), and a former coach at Penguins' minor league affiliate in Wilkes-Barre, PA, Clark Donatelli,[1] related to allegations that Mr. Donatelli assaulted Mrs. Skalde on November 11, 2018. Specifically, the Skaldes have pled three causes of action against the Penguins: negligent retention (Count III; Erin Skalde v. the Penguins), violations of the Pennsylvania Whistleblower Law ("Whistleblower Law") (Count IV; Jarrod Skalde v. the Penguins), and loss of consortium (Count V; Jarrod Skalde v. the Penguins).

---

[1] Undersigned counsel does not represent Mr. Donatelli.

The Penguins cannot be held liable on any of these three claims as matter of law. As a result, Counts III, IV, and V should be dismissed, with prejudice.

## FACTUAL BACKGROUND[2]

Jarrod Skalde is a former assistant coach for the American Hockey League's Wilkes-Barre/Scranton Penguins ("WBSP"), a minor league team affiliated with the Pittsburgh Penguins L.P. Doc. 1 at ¶14.

On or about November 11, 2018, the WBSP played a game in Providence, Rhode Island. Doc. 1 at ¶ 24. After the game, Mr. Donatelli, the head coach for the WBSP, invited the Skaldes out for dinner. *Id*. The Skaldes claim that after dinner, Mr. Donatelli made unwelcome sexual advances towards Mrs. Skalde, allegedly assaulting and battering her while the three waited for a car service to take them to their hotel, and then again in the back seat of the car. *Id*. at ¶ 25-31.

On June 21, 2019, Mr. Skalde reported the incident to the Penguins for the first time by informing the organization's Assistant General Manager. Doc. 1 at ¶42. On June 25, 2019, the following Tuesday, the Penguin's human resources leader interviewed Mr. Skalde about his internal report. *Id*. at ¶46. Mr. Skalde was later advised that the Penguins were terminating Mr. Donatelli's employment. *Id*. at 52. Mr. Donatelli departed the organization on Thursday, June 27, 2019. *See* Matt

---

[2] The facts set forth herein are taken from Plaintiffs' Complaint and are accepted as true for the purposes of this motion only.

Vensel, *Penguins Hire Calder Cup-Winning Coach Mike Vellucci After Clark Donatelli Resigns*, Pittsburgh Post-Gazette (Jun. 29, 2019, 6:05 PM), https://www.post-gazette.com/sports/penguins/2019/06/29/Puttsburgh-Penguins-hire-Mike-Vellucci-Clark-Donatelli-resigns-Calder-Cup/stories/201906290048.[3]

In September 2019, Mr. Skalde's power play duties were removed and, unlike the new head coach and another assistant coach, he was not given a new computer for work. Doc. 1 at ¶54-55.

On May 5, 2020, nearly a year after Mr. Skalde notified the Penguins about Mr. Donatelli's alleged misconduct, the Penguins informed Mr. Skalde that his position was being eliminated due to cutbacks necessitated by the COVID-19 pandemic. Doc. 1 at ¶58.

---

[3] Pursuant to Fed. R. Evid. 201(b)(2), in evaluating a Motion to Dismiss, the Court may look beyond the pleadings to "items subject to judicial notice." *U.S. v. Kindred Healthcare, Inc.*, 2020 U.S. Dist. LEXIS 115998 n.3 (E.D. Pa. June 29, 2020) (It is proper for the Court to take judicial notice of the public records, a complaint filed in a prior lawsuit, and various relevant news reports cited in Defendants' Motion to Dismiss)(quoting *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Courts may take judicial notice of news reports to evaluate "what was in the public realm" at a given time. *See Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006).

## STATEMENT OF QUESTIONS INVOLVED

1. Should the Court dismiss Counts III (negligent retention), IV (violations of the Whistleblower Law), and V (loss of consortium) for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6)?

## STANDARD OF REVIEW

A complaint should be dismissed when it fails to allege facts sufficient to state a facially plausible claim for relief. *Phillips v. Cty. of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Although the court should accept all well-pleaded facts as true, it does not need to accept legal conclusions disguised as facts. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 555). To properly state a claim, a plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

## ARGUMENT

As an initial matter, all claims against Lemieux Group should be dismissed because the Skaldes' only allegation concerning its involvement is that it owns the Pittsburgh Penguins L.P. Doc. 1 at ¶ 4. Mere ownership of a subsidiary does not justify imposing liability upon the parent. *See Rice v. First Energy Corp.*, 339 F. Supp. 3d 523, 532 (W.D. Pa. 2018).

Moreover, each of the three counts asserted against the Penguins should be dismissed because the Skaldes fail to state a claim for the reasons set forth below.

**I.   Count III: Mrs. Skalde cannot establish a claim for negligent retention.**

Mrs. Skalde seeks to hold the Penguins liable for Mr. Donatelli's alleged assault and battery on the theory of negligent retention.

The standard for negligent retention differs depending on whether the conduct occurred within the scope of the actor's employment or outside the scope of the actor's employment. *Fought v. City of Wilkes-Barre, Pa.*, No. 3:17-CV-1825, 2020 WL 3128301, at *33 (M.D. Pa. June 12, 2020).

To make the determination of whether Mr. Donatelli was acting within the scope of his employment, the Court should evaluate whether the conduct of which he is accused: (1) is of the kind Mr. Donatelli was employed to perform; (2) occurred substantially within the authorized time and space limits; (3) is actuated, at least in part, by the purpose to serve the Penguins; **and** (4) if force is intentionally used by Mr. Donatelli against another, whether the use of force is unexpectable by the Penguins. *Fought*, 2020 WL 3128301 at *34 (emphasis added).

Based on the allegations of the Complaint, it is clear that Plaintiffs cannot establish all four elements and, therefore, Mr. Donatelli was acting outside the scope of his employment. The conduct of which Mrs. Skalde – who was not an employee of Defendants – complains was assault and battery. Mr. Donatelli was employed as

5

a head hockey coach. Doc. 1 at ¶ 5. It was certainly not his role to assault or batter anyone and, to the extent he did so during his employment, it was not done for the service of the Penguins.

Because Mr. Donatelli was acting outside the scope of his employment, the following standard applies:

> A plaintiff alleging negligent retention under Pennsylvania law, must demonstrate that her loss resulted from,
>
>> (1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment, (2) that is committed on the employer's premises, (3) when the employer knows or has reason to know of the necessity and ability to control the employee.

*Fought*, 2020 WL 3128301, at *33 (internal citations omitted). The allegations of the Complaint make clear that the alleged assault did not occur on the Penguins' premises. Mrs. Skalde specifically alleges that the assault occurred at a restaurant and in a car after a road game in Providence, Rhode Island. Doc. 1 at ¶ 24-31. There are no allegations of any other incident involving Mrs. Skalde at any other location. With no assault or battery having occurred on the Penguins' premises, Mrs. Skalde's negligent retention claim fails. *See Kovach v. Serv. Pers. & Employees of the Dairy Indus., Local Union No. 205*, 58 F. Supp. 3d 469, 489 (W.D. Pa. 2014) (granting summary judgment on negligent retention claim where none of the alleged assaults

occurred on the defendant employer's premises, but instead occurred on another company's property or on a public road).

As a result, the Court must dismiss the negligent retention claim as a matter of law, with prejudice.

**II.     Count V: Mr. Skalde cannot establish loss of consortium because it is derivative of Mrs. Skalde's legally insufficient negligent retention claim.**

In Pennsylvania, a loss of consortium means a loss of the company, society, cooperation, affection, and aid of a spouse in every conjugal relation. *Thomas v. Shutika*, 2012 U.S. Dist. LEXIS 130784 *7 (M.D. Pa. Aug. 24, 2012). A husband who suffers a loss of consortium does not himself sustain physical injury, but rather, damaged marital expectations as a result of the injuries to his wife. *Id.*

Loss of consortium claims, however, are derivative in nature and will be dismissed where the underlying tort claims do not survive. *Chapman v. U.S.*, Civil No. 3:19-CV-00797, 2020 U.S. Dist. LEXIS 149984, *25 n. 5 (M.D. Pa. Aug. 19, 2020) (J. Wilson) ("Because this court has dismissed all of Plaintiffs' tort claims against Defendant United States, Plaintiff Susan Chapman's loss of consortium claim against Defendant United States is also properly dismissed") (citing *Banks v. Int'l Rental & Leasing Corp.*, 680 F.3d 296, 300 n.6 (3d Cir. 2012)); *Farr v. Northrup Quarry*, 4:18-cv-706, 2020 U.S. Dist. LEXIS 198253, *30 n. 9 (Oct. 23, 2020) (J. Wilson) (noting derivative nature of loss of consortium claim); *Perloff v. Transamerica Life Ins. Co.*, 393 F. Supp. 3d 404, 411 (E.D. Pa. 2019); *see also*

*Sutcliffe v. Bernese*, No. 4:19-CV-00317, 2019 WL 3776560, at *3 (M.D. Pa. Aug. 12, 2019) (internal citation omitted).

Mrs. Skalde has alleged only one tort claim against the Penguins – negligent retention of an employee. Because Mrs. Skalde's negligent retention claim must be dismissed as a matter of law, no underlying tort claims remain, and Mr. Skalde's claim of loss of consortium claim must also be dismissed due to its derivative nature. *Perloff*, 393 F. Supp. 3d at 411.

### III. Count IV: Mr. Skalde's Whistleblower Law claim fails as a matter of law.
#### A. First, Mr. Skalde's claim is time-barred.

At the outset, Mr. Skalde did not file his Complaint within the relevant statute of limitations period. The Whistleblower Law provides that an individual must bring an action within 180 days of the occurrence of the alleged violation. *See* 43 Pa. Cons. Stat. § 1424(a). Pennsylvania state and federal courts have consistently held that "this time limit is mandatory, and courts have **no discretion** to extend it." *O'Rourke v. Pa. Dep't of Corr.*, 730 A.2d 1039, 1042 (Pa.Cmwlth. 1999); *see also Vann v. City of Phila.*, No. 20-1433, 2020 U.S. Dist. LEXIS 132961 *4 (E.D. Pa. July 28, 2020) ("to allege a claim under the Pennsylvania Whistleblower Law, a plaintiff must, **without exception**, file a complaint within 180 days after the alleged violation occurred") (emphasis added).

Taking the facts as alleged by the Skaldes as true, the latest act of alleged retaliation occurred on May 5, 2020, when Mr. Skalde was informed that his position

was being eliminated due to cutbacks because of the COVID-19 pandemic. Doc. 1 at ¶ 58. Accordingly, for *any* of Mr. Skalde's allegations to be timely under the 180-day statute of limitations, he was required to file his Complaint no later than Sunday, November 1, 2020, which was extended to Monday, November 2, 2020 by operation of the Federal Rules of Civil Procedure. The Skaldes did not file their Complaint until November 3, 2020. Doc. 1. Accordingly, Count V should be dismiss because it is time-barred.

### B. Mr. Skalde's Whistleblower Law claim must be dismissed because the Whistleblower Law does not apply to the Penguins.

Even if Count IV were not time-barred, however, Mr. Skalde's claim still fails as a matter of law. The Whistleblower Law provides:

> No employer may discharge, threaten, or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority **an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined by this act.**

*See* 43 P.S. §1423(a) (2014) (emphasis added).

The statute makes an explicit distinction between the types of claims that can be brought against "public bodies" and other "employers," as those terms are defined in the Whistleblower Law. Specifically, claims involving "wrongdoing or waste" can be brought against "public bodies," while only claims involving "waste" may be

brought against other "employers." The Whistleblower Law, however, is inapplicable to the Penguins, as they are not a "public body" or "employer," as defined by the law, nor has Mr. Skalde alleged any instance of "waste."

1. <u>The Penguins are not a "public body" under the Whistleblower Law.</u>

Under the Whistleblower Law, a "public body" is a "body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body." 43 P.S. §1422.

Mr. Skalde contends that because the Penguins receive money from the Sports & Exhibition Authority of Pittsburgh, it qualifies as a "public body" under the Whistleblower Law. Doc. 1 ¶¶ 16-18, 86. This argument, however, has been repeatedly rejected by federal courts. The receipt of state or local funding, without more, is insufficient to transform a private employer into a "public body" subject to the Whistleblower Law. In *Lomaskin v. Siemens Medical Solutions USA, Inc.,* No. 19-3104, 2020 WL 4036823, *2 (3d Cir. July 17, 2020), the Third Circuit rejected the argument that the plaintiff's private employer was a "public body" under the Whistleblower Law because it received funds from a public body through its contract with Penn State University. No. 19-3104, 2020 WL 4036823, *2 (3d Cir. July 17, 2020). The Third Circuit "concur[red] with these courts that the phrase 'funded by or through' in 43 Pa. Cons. Stat. § 1422's definition of 'public body' refers to money

'specifically appropriated by a governmental unit.'" *Id*. The Third Circuit concluded that because Siemens did not receive appropriations from Pennsylvania or any of its political subdivisions, including Penn State, it did not qualify as a public body under the Whistleblower Law. *Id.* In short, to qualify as a "public body" under the Whistleblower Law, the employer must receive funds "specifically appropriated by a governmental unit." *Id.*

This concern echoes the Superior Court's hesitancy to expand the Whistleblower Law to private entities. Indeed, the Superior Court noted that it has "rejected an attempt to extend the Whistleblower Law to cover private employees." *Harris v. Moose Lodge, No. 1891 WDA 2013*, 2014 WL 10936761, *1 (Pa. Super. Ct. May 30, 2014) (citing *Krajsa v. Keypunch, Inc.*, 622 A.2d 355, 358 (Pa. Super. Ct. 1993) ("We are not prepared to expand the coverage of the [Whistleblower Law] into the private arena.")).

In short, courts have repeatedly rejected the exact argument that the Skaldes now advance because it impermissibly and unreasonably expands the scope of the Whistleblower Law. Therefore, because the Penguins are not a "public body" under Pennsylvania's Whistleblower Law, the Skaldes claim must fail, unless they can allege that the Penguins are an "employer" under the statute.

2. <u>The Penguins are not an "employer" under the Whistleblower Law.</u>

Under the 2014 Amendment, an "employer" is defined as "any of the following which *receives money from a public body to perform work or provide services* relative to the performance of work for the provision of services *to a public body*: (1) An individual; (2) a partnership; (3) an association; (4) a corporation for profit; or (5) a corporation not for profit." *See* 43 P.S. §1422.

Only a subset of private entities, specifically those that either perform work for or provides services to the Commonwealth or other public bodies, have been brought within the scope of coverage. *See* 43 P.S. §1422; *Adams v. HCF Mgmt.*, Civil Action No. 18-47, 2018 WL 3388404 at *3 (W.D. Pa. July 12, 2018).

Although the Penguins are alleged to receive state or local funds to build PPG Paints Arena, this fact does not render the Penguins an "employer," as that term is defined in the Whistleblower Law. Importantly, the legislature did not amend the law to extend coverage to entities such as sports teams that receive state or local monies or to any other entities for that matter that receive state funds to carry out necessary construction.

The plain language of the statute imposes two interrelated conditions of applicability: first, the money must come from a public body; and second, the payment must be in exchange for services provided to or work performed *for a public body*. 43 P.S. §1422. Although receiving funds from the Commonwealth to

build a sports arena may meet the first condition, it certain does not meet the second. Quite simply, the Penguins did not receive their funds to "perform work or provides services relative to the performance of work …*to a public body.*" *See id.* The Penguins did not perform work or provide services for the Commonwealth; they instead used the Commonwealth's funds to build an arena. This type of interaction does not elevate a private entity to "employer" status, as defined under the statute.

Because the Whistleblower Law only extends to coverage to entities which receive public funds in exchange for "perform[ing] work or services relative to the performance of work for or the provision of services to a public body," the plain language of the statute compels the conclusion that it is wholly inapplicable in this context. *Id*

Based on the statutory language, the Penguins are not an "employer" by means of the Whistleblower Law. Because the Penguins are not an "employer" under Whistleblower Law, Count IV must be dismissed, with prejudice.

> C. *Even if this Court finds that the Penguins are an "employer" under the Whistleblower Law, Mr. Skalde failed to allege any reports of "waste."*

Even if this Court finds that Defendant is an "employer" under the Whistleblower Law, the Penguins can only be held liable under the Whistleblower Law for allegations of "waste," not wrongdoing. 43 P.S. §1423(a). "Waste" is an "employer's conduct or omissions which result in substantial waste, abuse, misuse,

13

destruction, or loss of funds or resources belong to or derived from Commonwealth or political subdivision sources." 43 P.S. §1422. The Skaldes' Complaint is devoid of any allegations of "waste" by the Penguins. Instead, Mr. Skalde only allege that he reported an alleged instance of "wrongdoing." (Compl. ¶ 87). Because Mr. Skalde failed to allege any reports whatsoever of "waste" by an "employer," The Skaldes have failed to plead a viable Whistleblower Law claim; thus, Count IV of the Complaint should be dismissed, with prejudice.

## **CONCLUSION**

For the foregoing reasons, Counts III, IV, and V of the Complaint should be dismissed with prejudice. The Complaint's remaining claims are not against Lemieux Group, L.P. or Pittsburgh Penguins L.P., and therefore these Defendants should be dismissed from the civil action. As to Counts I and II of the Complaint, these proceedings should continue in the ordinary course.

Dated: November 23, 2020

Respectfully submitted,

/s/ *Lori Armstrong Halber*
Thomas H. Suddath, Jr., Esquire (37811)
Lori Armstrong Halber, Esquire (80762)
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
tsuddath@ReedSmith.com
larmstronghalber@reedsmith.com
*Counsel for Defendants Lemieux Group, L.P. and Pittsburgh Penguins L.P.*

# **CERTIFICATE OF SERVICE**

I, Lori Armstrong Halber, hereby certify that on this 23rd day of November, 2020, a true and correct copy of this Memorandum in Support of Motion Seeking Partial Dismissal of Complaint was filed electronically and served upon the following counsel of record via the Court's ECF system and the individual defendant via mail:

Michael D. Homans, Esquire
Homans Peck, LLC
134 North Wayne Avenue
Wayne, PA 19087
(215) 419-7463
mhomans@homanspeck.com

*Attorneys for Plaintiffs*

Clark Donatelli
21 Peckham Ave
Wakefield, RI 02879

*Defendant*


                                                   */s/ Lori Armstrong Halber*
                                                   Lori Armstrong Halber, Esquire