**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
CIVIL DIVISION**

| | | |
|---|---|---|
| ERIN SKALDE AND JARROD SKALDE, | : | |
| | : | |
| Plaintiffs, | : | No. 3:20-cv-02039-JPW |
| | : | |
| v. | : | Hon. Jennifer P. Wilson |
| | : | |
| LEMIEUX GROUP, L.P., PITTSBURGH PENGUINS L.P., and CLARK DONATELLI, | : | ELECTRONICALLY FILED |
| | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFFS' RESPONSE TO THE MOTION OF THE LEMIEUX GROUP AND THE PITTSBURGH PENGUINS TO DISMISS THE CLAIMS AGAINST THEM IN THE AMENDED COMPLAINT

Michael D. Homans, Esq. (PA #76624)
HOMANS PECK, LLC
134 North Wayne Ave., Ste. 300
Wayne, PA 19087
*Attorneys for Plaintiffs*

January 19, 2021

# **TABLE OF CONTENTS**

*PLAINTIFFS' RESPONSE TO THE MOTION OF THE LEMIEUX GROUP AND THE PITTSBURGH PENGUINS TO DISMISS THE CLAIMS AGAINST THEM IN THE AMENDED COMPLAINT* ........................................................... *1*

*STANDARD OF REVIEW* ................................................................................... *2*

*STATEMENT OF PERTINENT FACTS* ............................................................. *3*

I.      The Lemieux Group and the Pittsburgh Penguins are a Joint and Integrated Employer. ...................................................................... **3**

II.     Mr. Donatelli Assaulted Ms. Skalde While Performing His Job Duties, and His Assault Was Foreseeable. ................................................. **4**

III.    Defendants Ignore Alleged Public Funding of Penguins. .................... **5**

IV.     Plaintiffs Alleged Termination Due to Report of Unlawful Conduct. .... **6**

V.      The Alleged Employment Agreement Was Not Executed and Is Not Admitted by Jarrod Skalde. ............................................................. **7**

*ARGUMENT* ....................................................................................................... *8*

I.      While Erin Skalde Has Pleaded More Than Sufficient Facts to Establish that the Penguins Negligently Retained Mr. Donatelli, She Consents to Dismissal Without Prejudice So That She Can Pursue Her Claims in State Court. ................................................................................... **9**

II.     Mr. Skalde's Loss of Consortium Claim (Count V) Also May Be Dismissed Without Prejudice, Based on the Subject Matter Jurisdiction Issue Raised in Mr. Donatelli's Motion to Dismiss. ............................ **9**

III.    Mr. Skalde's Whistleblower Claim Survives Convoluted and Misleading Defenses of the Penguins. ............................................................. **10**

     1.   Mr. Skalde Has Pled More Than Sufficient Facts to Establish That the Penguins are a Public Body. ..................................................... 10

     2.   Mr. Skalde Has Presented Concrete Facts to Support that the Penguins Fired Him in Retaliation for Making a Report of Sexual Assault. ........... 13

     3.   The Penguins Informed Mr. Skalde of His Termination on May 29, 2020, and He Then Filed His Claim Within the 180-Day Limitations Period Under the Whistleblower Law. .................................................... 16

**IV.    The Penguins Motion to Compel Arbitration Fails for Many Reasons. 17**

***CONCLUSION*........................................................................................................ *22***

# TABLE OF AUTHORITIES

**Cases**

Bailets v. Pennsylvania Turnpike Comm'n, 633 Pa. 1, 18 (2015).......................... 16

Barros v. Wetzel, No. 1:14-CV-01746, 2015 WL 5785746, at *3 (M.D. Pa. Sept. 29, 2015)................................................................................................................. 2

Biddle v. Johnsonbaugh, 444 Pa. Super. 450, 664 A.2d 159, 163 (1995).............. 18

Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002).......................... 18

Castleberry v. STI Grp., No. 4:15-CV-00153, 2015 WL 6735897 (M.D. Pa. Nov. 4, 2015)................................................................................................................ 12

Clauss v. Geisinger Health Plan, No. 3:14-CV-889, 2014 WL 6850763, at *1 (M.D. Pa. Dec. 3, 2014)..................................................................................... 2

Gratz v. Ruggiero, No. CV 16-3799, 2017 WL 2215267, at *7 (E.D. Pa. May 19, 2017).................................................................................................................. 10

Hopkins v. New Day Fin., 643 F. Supp. 2d 704, 716 (E.D. Pa. 2009).................. 21

Hudyka v. Sunoco, Inc., 474 F. Supp. 2d 712, 717 (E.D. Pa. 2007) ..................... 18

I.H. ex rel. Litz v. Cty. of Lehigh, 610 F.3d 797, 802 (3d Cir. 2010) ................... 13

Koller v. Abington Mem'l Hosp., 251 F. Supp 3d at 864-65 (E.D. Pa. 2017) ....... 17

Piscopo v. Pub. Serv. Elec. & Gas Co., 650 F. App'x 106, 108–09 (3d Cir. 2016).. 2

Rankin v. City of Philadelphia, 963 F. Supp. 463, 467 (E.D. Pa. 1997) ............... 15

Scott v. Educ. Mgmt. Corp., 662 F. App'x 126, 130 (3d Cir. 2016)...................... 18

Tomlinson v. Checkpoint Sys., Inc., No. CIV.A. 06-2205, 2008 WL 219217, at *5 (E.D. Pa. Jan. 25, 2008)..................................................................................... 19

**Statutes**

43 Pa. Stat. Ann. § 1423 ........................................................................................ 18

In their second motion to dismiss, the Pittsburgh Penguins and the Lemieux Group do not address or deny the allegations that Clark Donatelli sexually assaulted plaintiff Erin Skalde, that they knew about it and past similar conduct by him and tried to keep it secret, or that they fired plaintiff Jarrod Skalde for having the nerve to report Mr. Donatelli's misconduct.  They clearly seek to avoid having to answer these points substantively and in a public filing.

Instead, they improperly try to argue the facts as if on summary judgment, and ignore the facts alleged by the plaintiffs, Erin Skalde and Jarrod Skalde, in order to seek dismissal of all claims against them.  This overly aggressive and premature attack on plaintiffs' claims should be stopped in its tracks, the allegations of the Amended Complaint must be accepted as pleaded at this stage, and discovery should move forward so that this Court and a jury can fairly determine the merits of Mr. Skalde's claims.

With regard to the claims brought by Erin Skalde, plaintiffs do not oppose dismissal without prejudice so that she may pursue her claims in state court due to lack of subject matter jurisdiction, as noted in the response to Clark Donatelli's motion to dismiss, filed herewith.

As for the Penguins' motion to compel arbitration, they fail to note that the Penguins themselves neither signed nor provided to Mr. Skalde a fully executed Employment Agreement during his employment.  As such, no binding contract was

entered compelling arbitration.  Their motion to compel arbitration also fails for other reasons, as noted below.

## STANDARD OF REVIEW

"Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated." Barros v. Wetzel, No. 1:14-CV-01746, 2015 WL 5785746, at *3 (M.D. Pa. Sept. 29, 2015).  "In deciding a motion to dismiss pursuant to Rule 12(b)(6), [the court] accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Piscopo v. Pub. Serv. Elec. & Gas Co., 650 F. App'x 106, 108–09 (3d Cir. 2016) (internal quotation omitted).

"[A] motion to dismiss may be granted only if . . . a court finds the plaintiff's claims lack of facial plausibility." Barros, 2015 WL 5785746, at *2.  "A complaint satisfies the plausibility standard when there is enough factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Clauss v. Geisinger Health Plan, No. 3:14-CV-889, 2014 WL 6850763, at *1 (M.D. Pa. Dec. 3, 2014) (citation omitted).

## STATEMENT OF PERTINENT FACTS

**I.     The Lemieux Group and the Pittsburgh Penguins are a Joint and Integrated Employer.**

Defendants fail to note the allegations of the Amended Complaint in relation to the joint and integrated employment relationship with the Penguins and the Lemieux Group.  Specifically, the Amended Complaint alleges (and these allegations must be accepted as true for purposes of this motion) that the Pittsburgh Penguins, L.P. and the Lemieux Group, L.P.:

- were a single, joint and integrated employer of Mr. Skalde;

- with unity of ownership, management, and business functions between the two entities;

- that the Lemieux Group provided Mr. Skalde's employee benefits; and

- that the Lemieux Group provided other labor-management functions relating to Mr. Skalde's employment.

Amended Complaint ¶ 6.

Ironically, defendants' own Exhibit C in support of their motion, a contract with the Commonwealth of Pennsylvania, expressly identifies and refers to the Lemieux Group as the "Penguins" (p. 1), reinforcing the unity of identity and operations of the two limited partnerships that own and operate the NHL professional hockey team.  In addition, public records confirm that the Lemieux Group and the Penguins have the same address, same ownership, and are one in the same in terms of employing Penguins' employees, with the Lemieux Group

claiming it employs 485 people and operates "sports teams."  See Exhibit 2, "SBA

PPP Loan Data – Lemieux Group LP (noting the Lemieux Group received a $4.82

million Paycheck Protection Plan loan from the federal government in August of

2020, that its industry is "Sports Teams and Clubs," and that it claimed 465 jobs

were retained).

> **II.     Mr. Donatelli Assaulted Ms. Skalde While Performing His Job Duties, and His Assault Was Foreseeable.**

While defendants *argue* that Mr. Donatelli was not acting within the scope

of his employment when he assaulted Mrs. Skalde, the allegations of the Amended

Complaint establish otherwise.

In fact, part of his job as a hockey coach was to travel to other cities for

"road games," and during those trips the Penguins encouraged and paid for

socializing, dining and drinking after the games, with family members.  Am. Cp.

¶¶ 22-24.  This was done to promote team bonding, as well as the exchange of

information among coaches to improve team performance.  Id. at ¶¶ 23, 25.

Consistent with this policy and practice, Mr. Donatelli encouraged Mr. Skalde and

Mrs. Skalde to join him for dinner and drinks after games, usually expensed to and

paid for by The Penguins, and did so on the night in question. Id. ¶¶ 27-28.

Mr. Donatelli was a serial offender and had sexually harassed, assaulted and

preyed upon other women during his work as a Penguins' head coach, and

Penguins management knew or should have known about it.  Am. Cp. ¶¶ 39-43.

4

**III.    Defendants Ignore Alleged Public Funding of Penguins.**

In relation to whether the defendants are public employers, as defined under the Whistleblower Law, the following allegations in the Amended Complaint must be accepted as true for purposes of this motion: that the Penguins (defined to include the Lemieux Group) regularly receive state and local funding through the Sports & Exhibition Authority of Pittsburgh ("SEA"), including but not limited to $8 million that helped construct their home arena and ongoing receipt of a parking tax surcharge imposed on the public for events hosted by the arena, in exchange for providing the public service of sports and entertainment for Pennsylvanians.  Am. Cp. ¶¶ 16-18.  The state also subsidizes the Penguins by allowing it to keep public revenues from all events held at the arena for the purposes of economically supporting the Penguins and keeping them in Pittsburgh and similarly subsidizing the operation of their minor league team, the Wilkes-Barre/Scranton Penguins (coached by Mr. Skalde) in Luzerne County. Id. at ¶¶ 19-21, 94.

In addition, the Memorandum of Understanding that defendants attached to their motion makes clear that $2,000,000 in Commonwealth funding is being provided to the "Penguins" to market and promote "the Team" and the arena. Ex. C to Def. Mem. at ¶ 13.

### IV.   Plaintiffs Alleged Termination Due to Report of Unlawful Conduct.

Defendants allege that plaintiffs did not allege "concrete facts" that he was retaliated against for engaging in protected conduct (reporting the unlawful and criminal conduct of a manager of the Penguins against a non-employee). Def. Mem. 12-13. In fact, plaintiffs alleged these facts in detail and they will be further developed through fact discovery.  The Penguins retaliated against Mr. Skalde for reporting unlawful conduct by **"shunning him and his wife, providing him with unequal treatment and reducing his duties as a coach, and then terminating him. . ."** Am. Cp. ¶ 96.  In addition, the Amended Complaint alleges that the Penguins' lawyer who questioned him about the unlawful conduct "asked whether he feared he would lose his job as a result of reporting Mr. Donatelli's conduct, and he answered that, 'yes,' he did have that fear." Id. ¶ 53.  Despite this expressed fear of retaliation, the Penguins did not give him any assurance that his job was safe or that he would not suffer. Id. ¶ 54.

In addition, the Penguins covered up Mr. Donatelli's unlawful conduct by falsely reporting to the public that he had resigned for personal reasons, and **instructed Mr. Skalde to "stay quiet" about Mr. Donatelli's wrongdoing**.  Id. ¶¶ 58-59.  The Penguins failed to express any support to Mrs. Skalde and did not provide any anti-harassment training to its employees to prevent future misconduct.  Id. ¶¶ 55, 60.  Other specific acts of retaliation leading up to the

termination included removing key duties from Mr. Skalde as an assistant coach and failing to provide him with a new computer, while the other coaches on his team did receive them.  Id. ¶¶ 61-62.  The plaintiffs also note the pretext of the Penguins' claim of a one-man reduction in force – in which they retained all other (21) Hockey Operations employees, firing only the coach who reported unlawful conduct. Id. ¶ 97.  The pretext and retaliation are also supported by other concrete facts: Mr. Skalde's supervisor (Mike Vellucci) recommended that Mr. Skalde be retained (id. ¶ 98), the Penguins' had a practice of retaining existing coaching staff in available positions, and the Penguins failed to place Mr. Skalde into two openings for which he was fully qualified in retaliation for reporting the unlawful conduct.  Id. ¶¶ 98-99.

## V.   The Alleged Employment Agreement Was Not Executed and Is Not Admitted by Jarrod Skalde.

Defendants provide no affidavit or verification to establish the authenticity of the Employment Agreement attached as Exhibit A to their memorandum, or its signatures, and in fact whether this contract was ever entered into is in dispute. Mr. Skalde recalls being presented with a proposed contract at some point after his employment started and signing it, but the Penguins never signed it or returned to him a fully executed agreement prior to their filing of their motion on December 21, 2020.  (Skalde Verification ¶¶ 6-7, attached as Exhibit 1.)  Notably, the so-

called "Employment Agreement" has an undated, apparently rubber-stamped signature for the Penguins' James Rutherford, and the defendants have provided no evidence or claim as to when that stamp was placed on the agreement or whether it was signed during Mr. Skalde's employment.  Def. Mem. at Ex. A, p. 10.  In fact, the claim of a mandatory arbitration clause was never alleged in prior communications with three separate lawyers for the Penguins, or the initial motion to dismiss.  Skalde Verification ¶ 9, Ex. 1.

As Mr. Skalde notes in his Verification, he reached an oral agreement as to all terms of employment for the Assistant Coach job in Wilkes-Barre/Scranton before starting work there. Id. ¶ 3. Only later did the Penguins send him an unsigned document that, to his knowledge, the Penguins never accepted, signed or agreed to be bound by.  Id. ¶¶ 6-7. Finally, the agreement is alleged to have been "entered into" on August 15, 2018, six weeks after Mr. Skalde was to have started employment with the defendants on July 1, 2018, per the so-called agreement's terms. (Ex. A to Def. Mem.)

## **ARGUMENT**

When the pleadings and all reasonable inferences therefrom are accepted as true, and in the light most favorable to Mr. and Mrs. Skalde, the Penguins' motion to dismiss fails on all counts.

I.     **While Erin Skalde Has Pleaded More Than Sufficient Facts to Establish that the Penguins Negligently Retained Mr. Donatelli, She Consents to Dismissal Without Prejudice So That She Can Pursue Her Claims in State Court.**

The Court must accept as true for purposes of this motion plaintiffs' detailed allegations that Mr. Donatelli's dining and drinking with his subordinate coaches and their families after hours, especially on road trips, was a well-established part of his job with the Penguins.  Am. Cp. ¶¶ 22-27.  In addition, plaintiffs' allegations of Mr. Donatelli's status as a serial offender with the Penguins, which was widely known and tolerated by management in the organization, must be accepted as true for purposes of this motion.  Id. ¶¶ 39-43.

Applying these facts to the legal standards for a negligent retention claim provides more than sufficient basis for this Court to allow the claim to move forward.

Nevertheless, plaintiffs consent to the dismissal *without prejudice* of Mrs. Skalde's claims against the defendants due to the subject matter jurisdiction issue raised in Mr. Donatelli's motion to dismiss, unless the Court deems it appropriate to retain jurisdiction of all claims.

II.    **Mr. Skalde's Loss of Consortium Claim (Count V) Also May Be Dismissed Without Prejudice, Based on the Subject Matter Jurisdiction Issue Raised in Mr. Donatelli's Motion to Dismiss.**

Defendants move for dismissal of the loss of consortium claim solely on the argument that if the negligent retention claim is dismissed, then so too must the

9

"derivative" loss of consortium claim. Def. Mem. 7-8.  For the reasons noted in the response to arguments raised for the first time in Mr. Donatelli's motion to dismiss, Mr. Skalde consents to such dismissal due to lack of subject matter jurisdiction, but only if it is *without prejudice*.

### III.  Mr. Skalde's Whistleblower Claim Survives Convoluted and Misleading Defenses of the Penguins.

Defendants argue undiscovered facts, and ignore those that are pleaded, in their effort to avoid accountability for retaliating against Mr. Skalde for reporting the unlawful conduct of Mr. Donatelli, while on the job for the Penguins. Moreover, they misstate the law in numerous regards.

### 1.  Mr. Skalde Has Pled More Than Sufficient Facts to Establish That the Penguins are a Public Body.

Contrary to defendants' incomplete statement of the law, the Whistleblower Law defines public bodies to include "not only public bodies, but also . . . partnerships . . . that 'receive money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body.'"  Gratz v. Ruggiero, No. CV 16-3799, 2017 WL 2215267, at *7 (E.D. Pa. May 19, 2017); see also 43 Pa. Stat. Ann. § 1423.

Defendants cannot dispute that they solicited and received public funds to operate their professional hockey teams.  Instead, Defendants weakly claim that because public funds for one of their public contracts (not all funding alleged in the

Amended Complaint) are being paid to "The Lemieux Group LP" and not directly to "the Pittsburgh Penguins LP," that the Penguins are not a "public body" and therefore not liable under the Pennsylvania Whistleblower Law. Def. Mem. at 9-11.  This argument can be made only by ignoring the factual allegations in ¶¶ 6, 16-21 & 94 of the Amended Complaint, which make clear that (1) the Penguins and the Lemieux Group are a joint and integrated employer and that they both receive public funding, and (2) the Penguins received public funds beyond the one contract defendants cite in their brief.  Specifically, the Pittsburgh Penguins, L.P. and the Lemieux Group, L.P. were a single, joint and integrated employer of Mr. Skalde; with unity of ownership, management, and business functions between the two entities; that the Lemieux Group provided Mr. Skalde's employee benefits; and that the Lemieux Group provided labor-management functions relating to Mr. Skalde's employment. Am. Cp. ¶ 6.  Defendants' own Exhibit C in support of their motion expressly identifies and refers to the Lemieux Group as the "Penguins" (p. 1), and provides that its funding is designed to help market and promote "the Team" and the public benefits the Penguins bring to the region.  Even the federal government and various media outlets recognize the interrelationship between the Lemieux Group and the Penguins.  See Exhibits 2-3. This certainly is enough specificity to create a plausible claim of joint employment, not to be dismissed on the pleadings.

11

Second, defendants' myopic focus on one source of public funding improperly ignores the pleadings in the Amended Complaint, which identify other sources of public funding of the Penguins, including that the Wilkes-Barre/Scranton Penguins also receive substantial state funding through the Luzerne County Convention Center Authority.  Am. Cp. ¶ 21.  The Amended Complaint also alleges that the Penguins receive other public funding and subsidies in relation to the operation of professional hockey teams, including tax surcharges. Id. ¶¶ 18, 20.  These public funds for the purpose of providing professional hockey and related services to the public more than meet the requirements of the law to make the Penguins a public body.

Defendants' next argument is that because they could not find a decision applying the Whistleblower Law to a joint and integrated employer, they must be exempt.  Def. Mem. at 9-10.  Contrary to defendants' bald assertion, when this Court has had the opportunity to address analogous claims of retaliation, it has not hesitated to find joint employer liability.  Castleberry v. STI Grp., No. 4:15-CV-00153, 2015 WL 6735897, *1-2 (M.D. Pa. Nov. 4, 2015) (an energy company and a staffing agency jointly liable as a single employer under 42 U.S.C. § 1981 for terminating two employees in retaliation for reporting racist comments).

Defendants next seek to distance themselves from co-defendant, Mr. Donatelli, their long-time head coach of the Wilkes-Barre/Scranton Penguins and

their assigned supervisor for Mr. Skalde.  Def. Mem. at 11.  As noted in the

statement of facts, the Skaldes do indeed allege that Mr. Donatelli was acting

within the scope of his employment, and in fact used his authority and role to

attack Ms. Skalde and other women.  In employment law, a master is strictly liable

for the acts of its servant committed in the course of his employment.  I.H. ex rel.

Litz v. Cty. of Lehigh, 610 F.3d 797, 802 (3d Cir. 2010).  The Penguins cannot

have their cake and deny they ate it, too.  Having employed Mr. Donatelli to run

the hockey team, and having given him free reign to wine, dine and serially assault

women (all paid for by the Penguins), their sudden treatment of him as some alien

being over whom they had no responsibility is, frankly, disingenuous and

dishonorable.

> **2.**     **Mr. Skalde Has Presented Concrete Facts to Support that the Penguins Fired Him in Retaliation for Making a Report of Sexual Assault.**

Defendants next claim that Mr. Skalde "did not properly plead that he was

terminated because of a report of 'wrongdoing.'"  Def. Mem. at 12, heading to

point 3.  They falsely claim that Mr. Skalde failed to allege any "concrete facts"

suggesting that his firing was retaliatory.

To the contrary, Mr. Skalde alleges that in May and June of 2019 he

repeatedly complained about the unlawful conduct, first to his supervisor, Mr.

Donatelli himself, and then to Penguins' top management.  Am. Cp. ¶¶ 45-49, 95.

13

The Penguins lawyer who questioned Mr. Skalde about his complaint "asked whether he feared he would lose his job as a result of reporting Mr. Donatelli's conduct, and he answered that, 'yes,' he did have that fear." Id. ¶ 53.  Despite this express fear of reprisal, which the Penguins' lawyer knew to ask about (most logically because she knew of the organization's retaliatory team culture), the Penguins failed to give Mr. Skalde any assurance that his job was safe or that he would not suffer retaliation. Id. at ¶ 54. In addition, the Penguins covered up Mr. Donatelli's unlawful conduct by falsely reporting to the public that he had resigned for personal reasons and – worse yet – made clear to Mr. Skalde that his report was not welcome, instructing him to "**stay quiet**" about Mr. Donatelli's wrongdoing. Id. at ¶¶ 58-59.

The Penguins also failed to express any support to Mrs. Skalde and did not provide anti-harassment training to employees to prevent future misconduct. Id. ¶¶ 55, 60.  Rather, after Mr. Skalde complained, the once-friendly Penguins **shunned him and his wife**. Id. ¶ 96.  Specific acts of retaliation leading up to the termination included removing key duties from Mr. Skalde as an assistant coach, and failing to provide him with a new computer, which the other coaches received. Id. ¶¶ 61-62.  The latter act in particular has been shown to demonstrate, in part, a plausible claim of causation in PWL cases.  See McAndrew v. Bucks Cty. Bd. of Comm'rs, 982 F. Supp. 2d 491, 506 (E.D. Pa. 2013) (employer ordered five new

vehicles for deputies, but left plaintiff with a used vehicle with mechanical problems).

Moreover, the exceptional nature of terminating Mr. Skalde despite his outstanding performance is established by the fact that of the 21 Hockey Operations employees with the Penguins, only Mr. Skalde's employment was terminated, notwithstanding the Penguins' culture of favoring in-house employees for job vacancies and openings for which other Penguins' executives believed Mr. Skalde was fully qualified and should be placed.  Id. at ¶¶ 67-71.  Finally, the fact that some Penguins officials told him the Wheeling job would be his, but then the defendants pulled it out from under him, strongly suggests an improper and inconsistent motive.

The instruction to Mr. Skalde to "stay quiet" about the unlawful conduct and termination is exactly the type of incriminating, concrete fact that can establish causation.  See Rankin v. City of Philadelphia, 963 F. Supp. 463, 467 (E.D. Pa. 1997) (denying motion to dismiss Whistleblower Law claim as to causation where plaintiff alleged that executive "put her index fingers to her lips, as though telling him to keep quiet").  Similarly, the failure of the Penguins to give Mr. Skalde any assurance that he would not be fired for making the report of unlawful conduct, after asking him if he had that fear and he expressly affirmed that he did, suggests a knowing and retaliatory mindset.  And, of course, the shunning of Mr. Skalde

and his wife after he complained is classic evidence of post-complaint ostracism establishing causation.  See Frazier v. City of Philadelphia, 441 F. Supp. 3d 76, 97 (E.D. Pa. 2020) (plaintiff's exclusion from meetings helped satisfy causation threshold).

As such, he has pleaded more than sufficient facts to establish causation.  As for defendants' argument that Mr. Skalde's position "was eliminated because of the COVID-19 pandemic," Mr. Skalde asserts that claim is pretextual (Am. Cp. ¶¶ 65, 97) and determining the truth of this disputed issue is a quintessential fact question to be determined by the jury, not on a motion to dismiss.  Bailets v. Pennsylvania Turnpike Comm'n, 633 Pa. 1, 18 (2015) (reversing summary judgment on Whistleblower Law claim, noting  disputed facts as to reasons for termination are to be determined by the jury).

### 3. The Penguins Informed Mr. Skalde of His Termination on May 29, 2020, and He Then Filed His Claim Within the 180-Day Limitations Period Under the Whistleblower Law.

Finally, turning to the issue of timeliness, defendants bizarrely claim that Mr. Skalde's allegations of termination are time-barred, even though the pleading establishes he was not informed of his termination until May 29, 2020 (Am. Cp. ¶ 71) and he filed his complaint with this Court on November 3, 2020, less than 180 days later. 42 Pa. Cons. Stat. § 1424(a).

16

While the Penguins advised Mr. Skalde of the elimination of his position on May 5, 2020, they communicated to him on that same day that the organization would find another place for him, such as the Wheeling job, and he would not be terminated.  Am. Cp. ¶¶ 65, 68.

In contrast to the case law cited by Defendants, the Penguins had not "reached a definitive conclusion to terminate [Mr. Skalde's] employment" (<u>Bailey v. United Airlines</u>, 279 F.3d 194, 198 (3d Cir. 2002)), nor was termination "a delayed but inevitable result" of the May 5 communication.  <u>Koller v. Abington Mem'l Hosp.</u>, 251 F. Supp 3d at 864-65 (E.D. Pa. 2017).  Given the express communications to him that the Penguins would place him in another job, Mr. Skalde understood that he would continue to be employed.

Only on May 29 did he receive notice of his termination. Am. Cp. ¶ 71. As such, the statute of limitations began to run on that date, making his filing of the Complaint on November 3, 2020 timely.

## IV.    The Penguins' Motion to Compel Arbitration Fails for Many Reasons.

The Penguins premise their motion to compel arbitration on a false and unverified assertion: that Mr. Skalde and the Penguins entered into the Employment Agreement, attached as Exhibit A to their motion.  Defendants provide no verification to validate this assertion, and in fact Mr. Skalde denies that the parties ever entered into the agreement, as the Penguins never signed onto it,

17

said they were bound by it, or provided him with a fully executed agreement during his employment (or even in the six months thereafter). Skalde Verification ¶ 7, attached as Ex. 1.

For an agreement to be binding it must be accepted by both parties. Hudyka v. Sunoco, Inc., 474 F. Supp. 2d 712, 717 (E.D. Pa. 2007) (finding that employee who had not read arbitration agreement could not have accepted its terms). Whether a valid agreement to arbitrate exists is a question of state contract law. Scott v. Educ. Mgmt. Corp., 662 F. App'x 126, 130 (3d Cir. 2016); Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002). Under Pennsylvania law, a valid contract exists if: (1) **both parties manifested an intention to be bound by the agreement**; (2) the terms of the agreement are sufficiently definite to be enforced; and (3) there was an exchange of consideration.  Biddle v. Johnsonbaugh, 444 Pa. Super. 450, 664 A.2d 159, 163 (1995) (emphasis added).

In this case all three elements are contested.

First, as noted in Mr. Skalde's Verification, the Penguins never provided him with a copy of the agreement signed by the Penguins or otherwise indicated to him that the Penguins accepted it and were consenting to be bound by its terms. Tomlinson v. Checkpoint Sys., Inc., No. CIV.A. 06-2205, 2008 WL 219217, at *5 (E.D. Pa. Jan. 25, 2008) (finding insufficient evidence on summary judgment to

show that employee who was not given a copy of employment contract was bound by it).

Second, even in the alleged agreement asserted here, there is no absolute or definite commitment to arbitrate claims.  The Penguins excluded most of their potential claims against Mr. Skalde from arbitration (Ex. A to Def. Mem. at Section 24: "Claims not covered are those claims seeking injunctive relief due to unfair competition, due to the use or unauthorized disclosure of trade secrets or confidential information, or due to the breach of non-disclosure or non-competition requirements. . . .").  The alleged agreement provides that Mr. Skalde would be permitted to "file a lawsuit" against them in court, and reserved to themselves the decision as to whether they "may use this Agreement in support" of a request to dismiss the lawsuit and compel arbitration.  Id.  Moreover, the alleged agreement is explicit that if the employment of Mr. Skalde is terminated "Due to Emergency" (¶ 17), such as "public emergency . . . or any business termination" (which is what the Penguins claim here, in asserting that Mr. Skalde was terminated due to Covid-19), then "all rights of Employee under this Agreement will cease as of the effective date of such termination and the Pittsburgh Penguins' obligations under this Agreement shall cease, . . ."  (¶ 20).  The alleged agreement has no statement indicating that the arbitration clause survives termination of the agreement.  As such, any claimed right or obligation to arbitrate claims terminated with the

Penguins' termination of Mr. Skalde's employment.  Even if the Penguins had not drafted such exclusions and exceptions to arbitration, the alleged agreement also is completely silent as to whether it covers retaliation and whistleblower claims, as none of the statutes or terms identified in Section 24 mention whistleblowing claims.  Precedent supports denying a motion to compel where the contract language is ambiguous as to whether a retaliation or whistleblower claim is covered. Sorathia v. Fidato Partners, LLC, No. CV 19-4253, 2020 WL 5121473, at *7 (E.D. Pa. Aug. 31, 2020) (declining to mandate arbitration where arbitration clause did not mention "retaliation, which [is] the matter[] in dispute"). Had Defendants intended to create an arbitration agreement that would extend to Plaintiff's employment relationship and retaliation more expansively, they could have included such language.  See, e.g., Valentin v. ADECCO, 777 F. App'x 50, 51 (3d Cir. 2019).  Instead, Defendants chose to omit reference to the "employment relationship" or retaliation.

Third, turning to the exchange of consideration, there obviously is none. Mr. Skalde already had accepted the oral agreement with the Penguins, including as to salary, benefits and duties, and begun work for the Penguins when this alleged agreement was presented in mid-August of 2018.  (Skalde Verif., Ex. 1 ¶ 3; Ex. A to Def. Mem., stating employment began July 1, 2018, but that agreement was not presented until August 15, 2018).

The alleged agreement also fails due to unconscionability. "Under Pennsylvania law, the test for unconscionability is whether one of the parties lacked a meaningful choice about whether to accept the provision in question and the challenged provision or contract unreasonably favors the other party to the contract. . . . [T]here must be both procedural and substantive unconscionability in order to void an arbitration provision." Hopkins v. New Day Fin., 643 F. Supp. 2d 704, 716 (E.D. Pa. 2009) (citations omitted).

As in Hopkins, the alleged agreement is substantively unconscionable because, while it granted both parties access to the court, it limited the actions that could be pursued in court to matters that only an employer, not an employee, would file. Id. Moreover, the alleged agreement gives the Penguins unfettered discretion to decide whether to keep a case in court if Mr. Skalde files suit (whereas, he would have no such discretion). The alleged agreement also is procedurally unconscionable because the Penguins failed to return a signed agreement to Mr. Skalde, binding the Penguins to its terms, and keeping to itself whether to be bound by the agreement until five months after his employment ended, claiming then for the first time that such an agreement had been signed and that Mr. Skalde was bound to arbitrate.

21

## <u>CONCLUSION</u>

For all of these reasons, the motion to dismiss filed by the Pittsburgh

Penguins and the Lemieux Group should be denied, and this case allowed to

proceed in court on the merits.

HOMANS PECK, LLC

By:   *s/Michael D. Homans*
　　　Michael D. Homans (Attorney I.D. # 76624)
　　　134 North Wayne Ave., Ste. 300
　　　Wayne, PA 19087
　　　(215) 419-7477
　　　*Attorneys for Plaintiffs Erin Skalde and Jarrod*
Dated:  January 19, 2020　　　*Skalde*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)(2)</u>

I, Michael D. Homans, hereby certify that, pursuant to Local Rule 7.8(b)(2), the foregoing Plaintiffs' Response in Opposition to the Motion of the Lemieux Group and the Pittsburgh Penguins to Dismiss the Claims Against Them in the Amended Complaint does not exceed 5,000 words. According to the word count feature of Microsoft Word, the foregoing contains 4,953 words.


*s/ Michael D. Homans*
Michael D. Homans, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I, Michael D. Homans, hereby certify that on this 19th day of January 2021, that a true and correct copy of the within Plaintiffs' Response in Opposition to the Motion of the Lemieux Group and the Pittsburgh Penguins to Dismiss the Claims Against Them in the Amended Complaint was filed using the Court's electronic filing system and served upon all counsel of record via ECF notification.

*s/ Michael D. Homans*
MICHAEL D. HOMANS
